UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

| | |
|---|---|
| Premier Healthcare Services, Inc. | Case No. 13-44501 |
| Crystal Care Home Health Services, Inc. | Case No. 13-44503 |
| Crystal Care PCA, Inc. | Case No. 13-44505 |
| Crystal Care Support Services, Inc. | Case No. 13-44506 |
| Debtors. | Chapter 7<br>Jointly Administered |

_____

**MEMORANDUM OPINION AND ORDER REGARDING
APPLICATION FOR FINAL COMPENSATION**
_____

At Minneapolis, Minnesota, March 17, 2015.

This matter came before the Court upon the application for final compensation and reimbursement of expenses by Larkin Hoffman Daly & Lindgren Ltd. ("Larkin") as counsel for the Debtors, and upon the objection thereto by the United States Trustee ("UST"). Richard Jay Reding appeared for Larkin; Michael R. Fadlovich appeared for the UST. The Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). For the reasons set forth below, the application will be approved in part and denied in part, and the objection of the UST is overruled.

BACKGROUND

The Debtors, operators of related health care businesses, filed separately for chapter 11 relief on September 16, 2013.[1] The next day, the Debtors filed an application under

---

[1] Ch. 11 Vol. Pet., Premier Healthcare Services, Inc., No. 13-44501 (Bankr. D. Minn. Sept. 16, 2013), ECF No. 1; Ch. 11 Vol. Pet., Crystal Care Home Health Services, Inc., No. 13-44503 (Bankr. D. Minn. Sept. 16, 2013), ECF No. 1; Ch. 11 Vol. Pet., Crystal Care PCA, Inc., No. 13-44505 (Bankr. D. Minn. Sept. 16, 2013), ECF No. 1; Ch. 11 Vol. Pet., Crystal Care Support Services, Inc., No. 13-44506 (Bankr. D. Minn. Sept. 16, 2013), ECF No. 1. By a September 20, 2013 court order, the cases became jointly administered with Premier Healthcare Services, Inc., No. 13-44501, designated as the lead case. See Order Auth'g and Direct'g Joint Admin., Premier Healthcare Services, Inc., No. 13-44501 (Bankr. D. Minn. Sept. 20, 2013), ECF No. 15.

1

11 U.S.C. § 327 to employ Larkin as counsel for the Debtors.  Appl. for Emp't, ECF No. 8.  That application proposed the following terms and conditions, in pertinent part:

> Applicant further requests that the Debtors be permitted to pay invoices from Debtors' counsel as received on a monthly basis, subject to the holdback of 20 percent of the invoiced fees as provided in Instruction 9(c) of this Courts [sic] published Instructions for Filing a Chapter 11 Case.  LHD&L has agreed to disgorge and return such fees (and has the ability to do so) should the Court so order.  The Debtors agrees [sic] to this procedure.

Id. at ¶ 5.  Instruction 9 of this Court's Instructions for Filing a Chapter 11 Case, as incorporated into the terms of the employment application, provides the following, in pertinent part:

> **Paydown Before Approval**: A professional who seeks to take advantage of this procedure must include a request for such treatment in the retention application and provide evidence in the application of the professional's agreement to disgorge if the court so orders, as well as evidence that the Debtor has agreed to such a procedure. If allowed, by order of the court all professionals whose retention has been approved may be allowed to submit regular monthly bills to the Debtor and the Debtor may be authorized to pay up to 80% of such fees and 100% of costs, pending court approval of the fees.  The court will consider requests for early paydown at the time the retention is approved.  Copies of all monthly bills shall be simultaneously sent to the Office of the United States Trustee. The court may sua sponte or upon motion by any interested party revoke the right to this paydown procedure should circumstances in the case so warrant.

Instructions for Filing a Chapter 11 Case ¶ 9, http://www.mnb.uscourts.gov/instructions-filing-chapter-11-case (last visited Mar. 16, 2015).  The UST recommended the application be approved and did not object to the terms and conditions implementing the Instruction 9 fee payment procedure.[2]  On October 17, 2013, the Court approved the application and approved the Instruction 9 pay down procedure ("pay down procedure").  Order Appr. Emp't, ECF No. 33.  The Court ordered, "Debtors [are] authorized to pay monthly invoices of LHD&L under the procedures in Instruction 9(c) of this Court's published Instructions for Filing a Chapter 11 Case."  Id. at ¶ 3.  Under the pay down procedure, the Court permitted Larkin a conditional pay

---

[2] See the September 18, 2013 electronic filing entry titled "Notice of U.S. Trustee recommendation in favor of [8] Application to employ professional."

down of its fees prior to court approval. Larkin was allowed to submit monthly bills to the Debtors; it was also required to send copies of all monthly bills to the UST. In turn, the Debtors were allowed to pay up to 80% of the fees and 100% of expenses, subject to subsequent court review and approval. Upon court approval of all of its fees, Larkin was entitled to the 20% holdback in unpaid fees, which could then be distributed to Larkin. However, if the Court did not approve the fees, the corresponding payments were subject to disgorgement. Subsequent compensation applications showed that the Debtors and Larkin implemented the pay down procedure. No party asserted that Larkin failed to comply with the pay down procedure guidelines. No party filed a motion to revoke the pay down procedure.

On January 24, 2014, Larkin filed an application for interim compensation for a total of $46,297.50 in fees and $5,862.09 in expenses, from September 16, 2013 to November 30, 2013. Appl. for Comp., ECF No. 90. Larkin received a $30,000.00 pre-petition retainer from the Debtors. In the application for interim compensation, Larkin stated that it applied the $30,000.00 retainer as follows: $9,802.50 to pre-petition fees and expenses, and $20,197.50 in accrued post-petition fees and expenses. Id. at ¶ 12. The UST did not challenge the application for interim compensation. On February 19, 2014, the Court approved the application. Order Appr. Comp., ECF No. 138.

Meanwhile, on January 29, 2014, the Minnesota Department of Human Services moved to terminate the Debtors' participation in state health care programs and to withhold program payments to the Debtors. Mot. for Decl. J., ECF No. 95. Upon termination of their participation in the state health care programs, the Debtors determined that they could not fund their operations under chapter 11. Stip. No. 3, ECF No. 131. The termination triggered a motion, ECF No. 96, by the UST to either dismiss or convert the Debtors' cases to chapter 7, as well as a

3

motion, ECF No. 101, by a secured creditor for relief from the automatic stay. To resolve the disputes, the Debtors stipulated to convert their cases to chapter 7. Stip. No. 5, ECF No. 131; Stip. No. 1, ECF No. 145. The Court approved the stipulation on March 24, 2014, and the cases were subsequently converted to chapter 7. Order Appr. Stip. ¶ 2, ECF No. 146.

On December 9, 2014, Larkin filed an application for final compensation, seeking approval of a total of $53,529.25 in fees and $388.49 in expenses, from December 1, 2013 to April 18, 2014, for services rendered before and after conversion. App. for Comp., ECF No. 188. Of that total, and during the time period covering the application, the Debtors paid Larkin $38,265.40 in fees and $311.83 in costs, all in accordance with the pay down procedure. Id. at ¶ 10. In the application for final compensation, Larkin applied the payments to the fees and sought approval of the unpaid balance of $15,263.85 in fees and $76.66 in costs, as a chapter 11 administrative claim. Id. at 4. The UST was the only party to object to the final application for compensation. The UST did not object to the fees and expenses; he agreed that the fees and expenses should be awarded as a chapter 11 administrative claim. Obj. to App. for Comp. ¶ 21, ECF No. 190. Instead, the UST objected to the application of the payments to the fees. Id. The UST argued that because the request for compensation had not yet received court approval under either § 330 or § 331, the payments remained property of the estate, and as such, they should be turned over to the chapter 7 trustee. Id. at ¶ 17. The UST further objected to the pay down because it enabled Larkin to receive an amount in excess of the pro rata distribution of Larkin's claim. Id. at ¶¶ 19–20. Although the chapter 7 trustee had not yet filed a final report, the UST alleged that the estate was "very likely administratively insolvent on the chapter 7 level," that the UST held a $4,550.00 chapter 7 administrative priority claim for unpaid fees,[3] and that there

---

[3] The quarterly fees imposed on chapter 11 debtors under 28 U.S.C. § 1930(a)(6).

appeared to be other chapter 11 administrative expense claims that would share a pro rata distribution with Larkin's claim. Id. at ¶¶ 10–11. At the hearing on the application, Larkin conceded that it was not entitled to compensation for post-conversion services[4] as the chapter 7 trustee did not employ Larkin under 11 U.S.C. § 327. Larkin, however, persisted in its claim for compensation and the corresponding payments for pre-conversion services.

## DISCUSSION

### A. Award of Compensation

A bankruptcy court may award compensation to certain professionals employed in a bankruptcy case under § 330 of the Bankruptcy Code ("Code"),[5] which provides the following, in pertinent part:

> (a) (1) After notice to the parties in interest and the United States Trustee and a hearing . . . the court may award to a . . . professional person employed under section 327 or 1103–
>   (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
>   (B) reimbursement for actual, necessary expenses.
> . . . .
>
> (3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including–
>   (A) the time spent on such services;
>   (B) the rates charged for such services;
>   (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

---

[4] At the December 30, 2014 hearing on the application for compensation, Larkin conceded that after converting the case, Larkin was not employed by the chapter 7 trustee and was thus not entitled to compensation for post-conversion services under 11 U.S.C. § 330. See 11 U.S.C. § 330(a)(1) (stating that the court may award reasonable compensation to a professional person employed under § 327 ); see also Lamie v. United States Tr., 540 U.S. 526, 538–39 (2004) ("[Section] 330(a)(1) does not authorize compensation . . . to . . . attorneys from estate funds, unless they are employed . . . by § 327. If the attorney is to be paid from estate funds under § 330(a)(1) in a Chapter 7 case, he must be employed by the trustee and approved by the court.").

[5] 11 U.S.C. §§ 101–1532.

5

> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.
>   (4)(A) . . . [T]he court shall not allow compensation for--
>     (i) unnecessary duplication of services; or
>     (ii) services that were not--
>       (I) reasonably likely to benefit the debtor's estate; or
>       (II) necessary to the administration of the case.

11 U.S.C. § 330(a)(1), (3), (4)(A). In addition, a court may award interim compensation to such professionals under § 331, which provides the following:

> A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

11 U.S.C. § 331. Courts in the Eighth Circuit apply the lodestar method to determine whether compensation is reasonable under §§ 330 and 331. In re Apex Oil Co., 960 F.2d 728, 732 (8th Cir. 1992) ("We find that the lodestar approach, including the possibility of adjustments in rare and exceptional circumstances, is an appropriate method to use in calculating reasonable compensation under § 330."). To calculate the lodestar amount, courts multiply the number of hours reasonably expended by the reasonable hourly rate. Id. at 731.

Clearly, before a court may approve compensation to a professional, however, such professional must be employed under § 327. See 11 U.S.C. § 330(a)(1) (stating that the court may award reasonable compensation to a professional person employed under § 327).

In the case at bar, the fees and expenses are undisputed. Indeed, the UST agrees that the entire amount of Larkin's fees and expenses should be allowed as a chapter 11 administrative claim. Obj. to App. for Comp. ¶ 21, ECF No. 190. Even in the absence of an objection, courts have an independent duty to review the propriety of professional fees and expenses. See, e.g., In re Fleming Cos., 304 B.R. 85, 89 (Bankr. D. Del. 2003) (stating that courts have an independent duty to review applications for compensation (citing In re Busy Beaver Bldg. Ctrs., 19 F.3d 833, 841 (3d Cir. 1994))).

As an initial matter, the Court denies Larkin's application for compensation with respect to post-conversion services, even though the propriety of post-conversion fees was not raised in the UST's objection because Larkin was not employed by the chapter 7 trustee after conversion. Prior to conversion and during the chapter 11 proceeding, the Debtors employed Larkin under § 327.[6] But, after the case converted to chapter 7, on March 24, 2014, the chapter 7 trustee did not employ Larkin. As held in Lamie v. United States Trustee, 540 U.S. 526, 538–39 (2004), § 330(a)(1) does not authorize compensation to an attorney from estate funds unless the attorney was employed by the trustee under § 327. Id. Indeed, Larkin concedes that it is not entitled to compensation for post-conversion services. The Court holds that under Lamie, Larkin is not entitled to compensation for services rendered after conversion because the chapter 7 trustee did not employ Larkin after conversion of the cases. Therefore, Larkin's application for compensation with respect to post-conversion fees in the amount of $1,428.00 is denied.[7]

---

[6] Under 11 U.S.C. § 1107(a), a chapter 11 debtor-in-possession has all the rights of a trustee, with certain exceptions.

[7] This amount derives from hours expended for post-conversion services, multiplied by their corresponding rates: 3 hours from timekeeper JNN, multiplied by $245.00 per hour, and 3.3 hours from timekeeper BHP, multiplied by $210.00 per hour. See Exh. B to App. for Comp., ECF No. 188.

7

The Court, however, makes a separate determination of whether to award Larkin compensation for pre-conversion services. In reviewing Larkin's billings for pre-conversion services, the Court notes that Larkin performed pre-conversion services, including case administration, moving for use of cash collateral, and contesting creditor motions. App. for Comp. ¶¶ 8–9, ECF No. 188. All of these services were actual and necessary, as they related to administering the chapter 11 cases. Such services were not duplicative. Over the applicable time period, Larkin expended 176.05 hours[8] for pre-conversion services, which is a reasonable amount of hours expended in light of the complexity of servicing jointly-administered chapter 11 cases. Larkin charged $400–$220 per hour for attorneys' services and $180–$210 for paralegals' services. The Court is familiar with Larkin's experience in handling bankruptcy matters, and the Court finds that the rates are reasonable within the market. In sum, the Court calculates the reasonable compensation for pre-conversion services as $52,101.25, as derived from the reasonable number of hours multiplied by the reasonable rates of compensation. The Court does not adjust the total compensation beyond that lodestar amount. The Court also finds that the expenses in the amount of $388.49 are actual and necessary. The Court holds that, under § 330, Larkin is entitled to final compensation with respect to pre-conversion fees in the amount of $52,101.25, and expense reimbursement in the amount of $388.49. The application for final compensation is approved with respect to these amounts. The Court next considers whether Larkin must turnover payments.

B.  **Modifying an Award of Compensation**

1.  **Denial or Reduction of Compensation**

---

[8] This total excludes 6.3 hours, which were rendered for post-conversion services. See Exh. B to App. for Comp., ECF No. 188.

Courts have express authority under the Code to deny compensation, to award compensation less than requested, and to reduce an award of compensation. A court may deny compensation to a professional who, during employment, is not disinterested or who has an interest adverse to the estate's interest. 11 U.S.C. § 328(c) ("[T]he court may deny allowance of compensation . . . and reimbursement . . . if at any time during . . . employment . . . such professional . . . is not a disinterested person, or represents or holds an interest adverse to the interest of the estate . . . ."). Under § 330(a)(2), a court has the discretion to award compensation less than requested, particularly when the requested compensation is unreasonable. See 11 U.S.C. § 330(a)(2) ("The court may, on its own motion or on the motion of the United States Trustee . . . or any other party in interest, award compensation that is less than the amount of compensation that is requested."). In certain circumstances, however, a court must reduce the award of final compensation, as in when interim compensation exceeds the total amount of compensation awarded under § 330(a)(5), which dictates the following:

> The court shall reduce the amount of compensation awarded under this section by the amount of any interim compensation awarded under section 331, and, if the amount of such interim compensation exceeds the amount of compensation awarded under this section, may order the return of the excess to the estate.

11 U.S.C. § 330(a)(5).

In this case, the Court determines that the denial or reduction of compensation for pre-conversion services is not warranted under any of the express provisions of §§ 328 and 330 because the UST does not argue that Larkin is not disinterested, or that the pre-conversion fees or expenses are unreasonable, or that Larkin is receiving an amount in excess of the award. Instead, the UST requests the Court to order turnover because the payments are property of the estate and because the payments would exceed Larkin's pro rata distribution.

### 2. Turnover and Disgorgement of Compensation

9

Courts have express, discretionary authority to order the return of excess compensation under various circumstances. When a professional receives compensation, such as a pre-petition retainer, and that compensation exceeds the reasonable value of services rendered, a court *may* order the professional to return the excess under § 329(b), which provides in pertinent part, "If such compensation exceeds the reasonable value of any such services, the court *may* . . . order the return of any such payment, to the extent excessive, to . . . the estate, if the property transferred . . . would have been property of the estate . . . ." 11 U.S.C. § 329(b)(1)(A) (emphasis added). A reasonable interpretation of § 329(b)(1)(A) requires that compensation exceed the reasonable value of services and that the property transferred would have constituted property of the estate. Id. A court *may* order the return of interim compensation that exceeds the total amount of compensation awarded under § 330(a)(5). See 11 U.S.C. § 330(a)(5) (providing that when interim compensation exceeds the amount of compensation awarded under this section the court "may order the return of the excess to the estate"). Noticeably absent, however, is an express Code provision which grants courts the authority to disgorge or order turnover of compensation when an estate becomes administratively insolvent, such as when a chapter 11 case converts to a chapter 7. Though the Code is silent in this respect, some courts assert implicit authority under the priority scheme of § 726 to either order disgorgement or order the return of compensation, for purposes of effectuating a pro rata distribution of administrative claims in light of the subsequent administrative insolvency of a converted case. See, e.g., Specker Motor Sales Co. v. Eisen, 393 F.3d 659, 664–65 (6th Cir. 2004) (ordering disgorgement of an interim compensation award after finding that "compensation must be disgorged when necessary to achieve *pro rata* distribution of a Chapter 7 bankruptcy estate"); In re Brick Hearth Pizza, Inc., 302 B.R. 877, 883 (Bankr. D. Minn. 2003) ("[T]urnover of the retainer balance is

warranted. The administrative insolvency is the ultimate justification."). Such implicit authority, however assumed, is discretionary, and other courts have declined to assume authority to grant disgorgement. See, e.g., In re Next Generation Media, Inc., 524 B.R. 824, 829–30 (Bankr. D. Minn. 2015) ("Section 726 deals solely with distributing property of the estate, it does not empower the trustee with the authority to collect property . . . . Section 726 does not provide for collection of property of the estate, as it lacks the words 'avoid,' 'disgorge' and 'turnover.'"); In re Headlee Mgmt. Corp., 519 B.R. 452, 458 (Bankr. S.D.N.Y. 2014) (holding that "there is no authority in the Bankruptcy Code to compel disgorgement of interim fees under §§ 726(a) or 105(a)"); In re Hyman Freightways, Inc., 342 B.R. 575, 578 (Bankr. D. Minn. 2006) (denying a trustee's motion for counsel to refund fees after determining that the trustee's reliance on § 726 for requesting the refund is misplaced because § 726 "is all about how a trustee is to distribute property of the estate, it says nothing about collecting property"), aff'd, Fokkena v. Fredrikson & Byron, P.A. (In re Hyman Freightways, Inc.), 2006 U.S. Dist. LEXIS 92206 (D. Minn. Dec. 19, 2006).

In the case at bar, the UST argues that Larkin must turnover the payments because the payments constitute property of the estate, and that Larkin's retention of the payments permits it to receive an amount in excess of its pro rata distribution of its chapter 11 administrative claim. In support of his proposition, the UST urges this Court to adopt and apply In re Brick Hearth Pizza, Inc., 302 B.R. 877 (Bankr. D. Minn. 2003), which ordered the debtor's chapter 11 counsel to turnover a pre-petition retainer after the chapter 11 case converted to chapter 7 and then became administratively insolvent. After conversion, the debtor's chapter 11 counsel applied for final compensation and for permission to apply a pre-petition retainer to counsel fees. Id. at 879. The chapter 7 trustee and the United States Trustee objected to counsel's request to apply the

retainer to fees, arguing that the retainer was property of the estate to be distributed under the priority scheme of § 726. Id. at 879–80. The court awarded counsel compensation for all services rendered in connection with the case as a chapter 11 administrative claim; but, because the case was administratively insolvent, the court did not allow debtor's counsel to apply the pre-petition retainer against the allowed claim. Id. at 883–84. Instead, the court exercised its discretionary authority and ordered counsel to turnover the full retainer to the chapter 7 trustee for administration of the estate, in accordance with the priority scheme of § 726. Id. at 884.

The Court is not persuaded that the reasoning of Brick Hearth applies here. The funds at issue in that case concerned a pre-petition retainer. In contrast, the funds at issue here concern post-petition payments. Additionally, there was no discussion in Brick Hearth about an employment order that permitted the debtor to pay counsel fees prior to court approval of compensation. Here, there is a court order, ECF No. 33, in place that authorizes the Debtors to pay a portion of counsel fees prior to court approval. In accordance with that court order, Larkin received post-petition payments from the Debtor during the chapter 11 administrative period.

Neither is the Court persuaded that it is proper to exercise its discretionary authority to order turnover of the post-petition payments in this case. Even if the funds at issue were property of the estate at some point prior to their transfer, the funds are in Larkin's possession. Based on the facts of this case, the only available means to recover the transferred funds in the possession of Larkin are either turnover or avoidance of the transferred property. If the Court declines to order turnover, then, for the UST to succeed on his theory to recover transferred property for the benefit of the estate here, the transfers must first be avoided under § 549. See Rosen v. Dahan (In re Hoang), 469 B.R. 606, 621–22 (D. Md. 2012) (determining that property transferred post-petition becomes property of the estate under § 541(a)(3) only after the transfer

12

has been avoided under § 549(a)). Indeed, § 549 serves as a mechanism to bring post-petition transfers back into the estate. See 11 U.S.C. § 549; see also Vogel v. Russell Transfer, Inc., 852 F.2d 797, 800 (4th Cir. 1988) ("A trustee's power to avoid transfers of property of the estate that occur after commencement of a bankruptcy case is generally given in section 549."). But, § 549 excepts court-authorized transfers from avoidance. See 11 U.S.C. § 549(a)(2)(B); see also In re Next Generation Media, Inc., 524 B.R. 824, 829 (Bankr. D. Minn. 2015) ("Section 549 provides for the avoidance of *unauthorized* post-petition transfers."); In re Hyman Freightways, Inc., 342 B.R. 575, 579 (Bankr. D. Minn. 2006) ("The negative implication of § 549 is that post-petition payments authorized by the court or the Code are not recoverable by the trustee."). The UST declined to pursue an avoidance action here, stating that the "trustee would not be recovering funds in the manner of an avoidance action, but instead is simply collecting funds that have always been property of the estate." Obj. to App. for Comp., ECF No. 190. Again, even assuming that the post-petition transferred funds were property of the estate, the facts in this case simply do not convince the Court that turnover is appropriate here under the express provisions of the Code because the Court finds that Larkin's compensation does not exceed the reasonable value of its services, and the interim compensation does not exceed the total amount of compensation awarded. In addition, here, there is no motion for turnover of the funds; there is no complaint for turnover of the funds; nor is there a complaint to avoid a post-petition transfer of the funds. There is only an objection to the application of those funds to the fees. As noted earlier, while some courts have invoked discretionary authority to order turnover of compensation under §§ 329, 330, and 726, courts markedly disagree that § 726 serves as a basis to order the return of compensation in light of the administrative insolvency of a converted case. This Court is persuaded that § 726(b) does not expressly or implicitly provide for either the

13

turnover or disgorgement of professional compensation when a case becomes administratively insolvent. Further, the Court does not believe that § 726(b) serves as a basis to order disgorgement or turnover of professional compensation when a case becomes administratively insolvent.

Here, the Court declines to order, sua sponte, turnover because turnover is not warranted and it is not explicitly provided for under the Code—the fees are not unreasonable, compensation is not excessive, Larkin is disinterested, and the transfers are not avoidable. Therefore, the UST's objection to the application for final compensation is overruled. Larkin's application of $38,265.40 in payments to fees and $311.83 in payments to expenses is approved. Larkin's request for a chapter 11 administrative claim for the unpaid balance of $13,835.85 in fees and $76.66 in costs is approved. In light of the foregoing,

*IT IS HEREBY ORDERED THAT:*

1. The UST's objection is OVERRULED.

2. Larkin's request for final compensation with respect to pre-conversion fees in the amount of $52,101.25, and expense reimbursement in the amount of $388.49 is APPROVED.

3. Larkin's request for final compensation with respect to post-conversion fees in the amount of $1,428.00 is DENIED.

4. Larkin's collection of $38,265.40 in payments for fees and $311.83 in payments for expenses is APPROVED.

5. Larkin's request for a chapter 11 administrative expense claim for the unpaid amount of $13,835.85 in fees and $76.66 in costs is APPROVED.

Date: *March 17, 2015*

*/e/ Michael E. Ridgway*
Michael E. Ridgway
United States Bankruptcy Judge

NOTICE OF ELECTRONIC ENTRY AND FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *03/17/2015*
Lori Vosejpka, Clerk, by MJS